# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| POWER CONTRACTING, INC., GARY L. REINERT, SR. and SAFE FOUNDATIONS, INC. d/b/a METAL FOUNDATIONS, LLC, )<br>Plaintiffs, ) | ) ) ) ) ) | 2:09-cv-00970 |
| v. | ) ) | |
| STIRLING ENERGY SYSTEMS, INC., and IMPERIAL VALLEY SOLAR, LLC., Defendants. | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

November 22, 2010

Presently pending before the Court for disposition is the PARTIAL MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6), with brief in support, filed by Defendants (*Document Nos. 21 and 22*), the BRIEF IN OPPOSITION filed by Plaintiffs (*Document No. 25*), and the REPLY BRIEF filed by Defendants (*Document No. 26*).

After careful consideration of the motion, the filings in support and opposition thereto, the memoranda of the parties, the relevant case law, and the record as a whole, the partial motion to dismiss filed by Defendants will be granted.

### **Factual Background**

The following facts are taken from the revised Second Amended Complaint. Stirling Energy Systems, Inc. ("SES") and SES Solar Two, LLC.,[1] have contracts to build and operate two large power plants with major California utilities. One of the solar power projects "is to be constructed in Imperial County, California and is known as the "Solar II" Project.

---

[1] On or about February 23, 2010, SES Solar Two LLC changed its name to Imperial Valley Solar, LLC. The caption of this lawsuit has been amended to reflect such change.

In early 2006, Gary L. Reinert, Sr. ("Reinert"), acting as a representative of Power Contracting Inc. ("PCI") and SAFE Foundations, Inc., d/b/a Metal Foundations, LLC ("Metal"), met with representatives of Schuff Steel Company ("Schuff")[2] "to discuss certain business arrangements regarding the introduction of solar power, including but not limited to the manufacture of one piece frames for solar dishes and metal foundations to be used in lieu of concrete, multi-piece foundations for sun catching systems using solar powered dishes in the Western states of the United States of America." Second Amended Complaint, at ¶ 11. Through discussions with Schuff, Reinert became aware "that SES was in the process of marketing its solar energy company . . ., in the form of solar dishes known as Sun Catchers, . . . and would require knowledgeable companies to manufacture the support frames for their dishes, and thereafter install the foundation for the dishes." *Id*. at ¶ 12.

According to Plaintiffs, following Reinert's discussion with Schuff, Metal proceeded to invent, design, and develop a new foundation system for SES's solar dishes for installation on the Solar II project, which utilized metal in lieu of concrete, and was a one piece design, as opposed to a multiple units design. *Id*. at ¶ 17. Representatives of Metal and certain engineering subcontractors developed and revised the designs and drawings for the metal, one piece foundations.

According to Plaintiffs, Schuff acknowledged to Plaintiffs that the designs, drawings, ideas, methods, means, installation procedures and specifications for the metal, one piece foundations were confidential, proprietary and owned exclusively by Plaintiffs. On August 2,

---

[2] The Court notes that the Second Amended Complaint, unlike the First Amended Complaint, does not name Schuff Steel Company as a defendant.

2006, Schuff, Metal, PCI, Road Runner Planning and Consulting, Inc.,[3] and Reinert entered into a Confidentiality Agreement, wherein Schuff expressly agreed, *inter alia*, to keep confidential any and all information provided to it regarding the designs, drawings, ideas, methods, means, and installation procedures for the metal, one piece foundations. *See* Exhibit A to Second Amended Complaint. On June 7, 2007, SES allegedly "acknowledged … SES's intent to enter into a contract with Metal Foundations and/or PCI to be the installer of the foundation of the Solar II Project." *See* Exhibit C to Second Amended Complaint.[4] According to Plaintiffs, throughout the course of the design and testing process, SES continually represented that Plaintiffs would be the installer of the foundations on the Solar II Project. Plaintiffs allege that "[b]ased on the representations made by SES, Metal and PCI continued to provide SES with access to its confidential and proprietary information and also continued to expend time, resources and finances into the development, manufacture and installation of the metal, one piece foundation." *Id*. at ¶ 31.

On April 16, 2008, Metal and Schuff entered into a Memorandum of Understanding for the Solar II Project.[5] Thereafter, additional meetings were held between Metal, PSI and SES whereby SES requested and PCI and/or Metal agreed to supply a detailed cost breakdown for

---

[3] Although the Second Amended Complaint deleted Road Runner Planning and Consulting, Inc. from the caption and allegations of the Complaint, it is still mentioned in the Second Amended Complaint.

[4] The correspondence from Scott Henson, SES, to Gary L. Reinert, Jr., states, in pertinent part, as follows: "Per our conversation two days ago, I am requesting two more SAFE foundation structural analyses be run for our two upcoming Solar Dish Concentrator sites. Near the end of the year we will be installing two more dishes at Sandia Laboratories in Albuquerque, NM and six more dishes at our pilot site in California in the Mojave desert east of Barstow. The majority of them will most likely include SAFE foundations." Exhibit C to Second Amended Complaint.

[5] The Memorandum of Understanding is signed by "Gary L. Reinert, Jr., Metal Foundations" and "David A. Schuff, Chairman of the Board, Schuff Steel Company."

PCI to install the metal, one piece foundation. Prior to testing the metal, one piece foundation, SES requested that PCI supply the equipment, labor and engineering to monitor the testing of its foundation.

PCI provided a proposal to SES to supply the equipment, labor, and engineering for testing the metal, one piece foundations. The proposed terms included a provision that "if PCI reduced its price based upon the parties' relationship, and due to SES's tight budget, and if the foundation passed the test, PCI would be the installer of the foundations for the Solar II Project." *Id*. at ¶ 40.

On July 24, 2008, SES and Metal met to discuss, *inter alia*, the details of the contractual relationship between SES, Metal, and PCI for the manufacture and installation of the metal, one piece foundations. According to the Second Amended Complaint, on or about August 11, 2008, Scott Hansen of SES confirmed that SES required the assistance of Metal and PCI to proceed forward with the Solar II Project and that PCI would perform the testing and installation of the foundations for the Project.

According to the Second Amended Complaint, Plaintiffs and their subcontractors and engineering firms attended various meetings with SES and "continued to provide significant monetary support, as well as access to its designs, drawings, methods, means, installation equipment, specifications and ideas to SES pursuant to SES's agreement for Plaintiffs' to install the foundations for the Project." *Id*. at ¶ 45.

On August 15, 2008, URS Corporation Americas ("URS") issued a Technical Memorandum with regard to results of certain geotechnical analyses for the metal, one piece foundation. Plaintiffs allege that SES requested that Metal review, comment and advise

regarding the Technical Memorandum and the designs and technical information necessary for the manufacture and installation of the metal, one piece foundation.[6]

In November 2008, Metal, PCI, and SES allegedly tested a metal, one piece foundation to determine whether it met the required structural standards for use on the Solar II Project. Plaintiffs allege that "[f]ollowing testing procedure, SES's representatives verbally and in writing repeatedly advised that it intended to use Plaintiffs' metal, one piece foundations for the Solar II Project."

However, despite the alleged representations of SES that it intended to use Plaintiffs' metal, one piece foundations, Plaintiffs allege that in May 2009, SES sent out requests for proposals to numerous companies to install metal, one piece foundations for the Solar II Project, but did not invite PCI or Metal to submit a proposal and did not award the installation of the foundations to PCI. Further, Plaintiffs allege that Defendants have utilized, or intend to utilize, Metal's "confidential and proprietary drawings, designs, methods, means and installation procedures for the metal, one piece foundations for the Solar II Project." *Id.* at ¶¶ 87-88.

Plaintiffs have filed a seven (7) count Second Amended Complaint which includes claims for injunctive relief (Count I), breach of contract (Counts II and III), fraudulent misrepresentation (Count IV), common law misappropriation of trade secrets and confidential information (Count V), violation of the Pennsylvania Uniform Trade Secret Act (Count VI), and unfair competition (Count VII).

---

[6] The Court notes that the Second Amended Complaint states that the request of SES to Metal to review the Technical Memorandum is attached to the Complaint as "Exhibit E." However, Exhibit E is the actual Technical Memorandum prepared by URS, not a request by SES to review such Technical Memorandum.

Defendants request that Counts III, V, and VII be dismissed as they fail to state claims upon which relief may be granted. Defendants also seek to dismiss Gary L. Reinert, Sr., despite being named as a plaintiff in Counts I, II, V, and VI, as the Second Amended Complaint fails to state any cause of action on his individual behalf.

## **Standard of Review**

Rule 12(b) of the Federal Rules of Civil Procedure provides that "the following defenses may at the option of the pleader be made by motion: . . . (6) failure to state a claim upon which relief can be granted." A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) challenges the legal sufficiency of the complaint filed by Plaintiff. The United States Supreme Court has held that "[a] plaintiff's obligation is to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986) (alterations in original)).

The Court must accept as true all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. However, as the United States Supreme Court made clear in *Twombly*, the "factual allegations must be enough to raise a right to relief above the speculative level." *Id*. The Supreme Court has subsequently broadened the scope of this requirement, stating that only a complaint that states a ***plausible*** claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 1950 (2009) (emphasis added).

Thus, after *Iqbal*, a district court must conduct a two-part analysis when presented with a motion to dismiss for failure to state a claim. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the Court must separate the factual and legal elements of the claim. *Id*.

6

Although the Court "must accept all of the complaint's well-pleaded facts as true, (it) may disregard any legal conclusions." *Id*. at 210-211.  Second, the Court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts." *Id*. at 211 (*citing Iqbal* 129 S. Ct. at 1950).

As a result, "pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than a possibility of relief to survive a motion to dismiss." *Fowler*, 578 F.3d at 211.  That is, "all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible.  This then 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*. at 210 (*quoting Iqbal*, 129 S. Ct. at 1948).

However, nothing in *Twombly* or *Iqbal* changed the other pleading standards for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and the requirements of Fed. R. Civ. P. 8 must still be met.  *See Philips v. Co. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal citations omitted).  Fed. R. Civ. P. 8 requires a showing, rather than a blanket assertion, of entitlement to relief, and "contemplates the statement of circumstances, occurrences, and events in support of the claim presented and does not authorize a pleader's bare averment that he wants relief and is entitled to it." *Twombly*, 550 U.S. at 555 n.3 (internal citations and quotations omitted).  Additionally, the Supreme Court did not abolish the Fed. R. Civ. P. 12(b)(6) requirement that "the facts must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on those merits." *Philips*, 515 F.3d at 231 (*citing Twombly*, 550 U.S. at 553).

"Courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Attached to the Second Amended Complaint are a number of exhibits, upon which Plaintiff's claims are based. Thus, the pending Partial Motion to Dismiss does not need to be converted into a motion for summary judgment because of the Court's consideration of these exhibits.

## Discussion

I. **"Count III (Breach of Contract), Metal and PCI v. SES"[7]**

In Count III (breach of contract), Plaintiffs allege that "SES repeatedly agreed, both verbally and in writing, that PCI and SES would enter into an agreement for PCI to serve as the installer of the metal, one piece foundation for the Sun Catchers for the Solar II project." Second Amended Complaint, at ¶ 117. Plaintiffs further allege that SES awarded the bid for the installation of the metal, one piece foundations to an entity other than PCI. *Id.* at ¶ 118.[8]

Defendants argue that Count III should be dismissed as Plaintiffs have failed to identify any contract which Defendants have allegedly breached.[9] Defendants argue that no contract was ever formed between the parties for the installation of the metal, one piece foundation for the

---

[7] In the heading of each count, the only defendant named is SES. However, in the prayer for relief of each count, Plaintiff requests judgment against "Defendant<u>s</u>" and the Partial Motion to Dismiss was filed on behalf of both Defendants.

[8] In their Memorandum, Defendants deny that a contract has been awarded to install foundations for the Solar II Project. See Memo. at 5, n. 3. The resolution of that issue will require discovery and, therefore, is not before the Court at this time.

[9] Defendants request, in the alternative, that if Count III is not dismissed in its entirety, that Plaintiff Metal Foundations be dismissed as Plaintiffs have failed to allege a contract between Metal and SES.

Solar II Project. Rather, SES agreed to enter into a binding contract *in the future*. In fact, Plaintiffs unequivocally allege that "SES repeatedly agreed, both verbally and in writing, that PCI and SES *would enter into an agreement* for PCI to serve as the installer of the metal, one piece foundation for the Sun Catchers for the Solar II Project." *Id*. at ¶ 117 (emphasis added).

Under Pennsylvania law, "evidence of preliminary negotiations or an agreement to enter into a binding contract in the future does not alone constitute a contact." *Channel Home Ctrs. v. Grossman,* 795 F.2d 291, 298-99 (3d Cir. 1986). A general agreement to enter a binding contract in the future fails "as an enforceable contract because the parties themselves have not come to an agreement on the essential terms of a bargain and therefore there is nothing for the court to enforce." *ATACS Corp. v. Trans World Com., Inc.*, 155 F.3d 659, 665 (3d Cir. 1998).

The Memorandum of Understanding Between Schuff Steel and Metal Foundations specifically states as follows:

> *In the event* that SES and Schuff enter into a definitive manufacturing agreement, Schuff *seeks to explore the opportunity to have Metal Foundations utilize the patented Metal Fin Pipe Foundation (MFPF) to help install the solar dish pedestals*. . . .
>
> In the event that Schuff enters into an agreement with SES to manufacture and install the approximately seventy thousand (70,000) solar generators (which includes the use of a Metal Fin Pipe Foundation (MFPF)), Schuff Steel will enter into a mutually agreeable agreement with Metal Foundations for the installation of the solar dish pedestals and use of the Meal Fin Pipe Foundation (MFPF) for this project at an approximate value of forty five (45) million dollars. Use of Metal Foundations and the installation system, and any Schuff-Metal Foundation agreement must also be expressly approved by SES. *However, no legal obligation between Schuff and Metal Foundations for use of the MFPF systems will exist unless it is reduced to a definitive executed agreement*.

*See* Memorandum of Understanding, Exhibit D (emphasis added).[10]

---

[10] As noted *supra*, Schuff Steel Company is not a party to this action. *See* footnote 2.

It is black letter law that no breach of contract claim can stand where the operative document states that it does not create a binding legal obligation and where the future contract is contingent upon other events coming to pass. The Memorandum of Understanding in this case clearly is contingent upon numerous events coming to pass and, thus, the Court finds and rules that the terms thereof simply do not rise to the level of a legally enforceable contract.

Accordingly, Count III of Plaintiff's Second Amended Complaint will be dismissed for failure to state a claim.

II.  **"Count V (Conversion/Misappropriation, Disclosure and Misuse of Trade Secrets and Confidential Information); PCI, Metal, and Reinert v. SES"**

In Count V of the Second Amended Complaint, Plaintiffs claim that the conduct of SES "constitutes illegal misappropriation, misuse and conversion of trade secrets and confidential proprietary business information." Second Amended Complaint, at ¶ 138.

Defendants argue that Count V should be dismissed because this claim is preempted by the Pennsylvania Uniform Trade Secrets Act ("PUTSA"), which codified the law in Pennsylvania with regard to trade secret misappropriation and, furthermore, Plaintiffs have alleged a violation of the PUTSA in Count VI of the Second Amended Complaint.[11]

In response, Plaintiffs contend that it is premature to decide whether their common law trade secret claim is preempted by PUTSA because there are issues of fact with regard to whether Plaintiffs possess trade secrets under the PUTSA or the common law. However, the

---

[11] The PUTSA specifically provides that it "shall not apply to misappropriation occurring prior to the effective date of this act, including a continuing misappropriation that began prior to the effective date of this act and which continues to occur after the effective date of this act." 2004 Pa. Laws 14 § 4. The Act became effective on April 19, 2004, sixty days after it was enacted. *Id.* at § 5. The interactions of the parties to this lawsuit occurred between 2006 and 2008, well after the effective date of the PUTSA.

Court finds this argument to be without merit because Plaintiffs have affirmatively alleged that they had "trade secrets." Further, the Court finds that Plaintiffs' reliance on *Youtie v. Macy's Retail Holdings*, 626 F.Supp.2d 511 (E.D. Pa. 2009), is misplaced. In *Youtie*, the sole information at issue was "first cost" data and the trial court found that "neither party had properly briefed whether this information qualifies as a trade secret." *Youtie*, 626 F.Supp.2d at 523. Next, the trial court specifically stated as follows:

> The PUTSA displaced Pennsylvania's common law tort for misappropriation of trade secrets [] there is no indication that the statute effected a substantive shift in the definition of 'trade secret.' The common-law definition, like the statutory one, provided for protection for a formula, pattern, device, or compilation of information and required that the information be kept secret and provide a competitive value to the owner. The conclusion that the PUTSA did not substantially alter the definition of "trade secret" is supported by post-PUTSA cases that rely on common law in determining whether certain information rises to the level of a trade secret.

*Id*. at 522, n. 10 (internal citations omitted).

Count V of the Second Amended Complaint specifically alleges that the "conduct of SES constitutes illegal misappropriation, misuse and conversion of ***Plaintiffs' trade secrets and confidential proprietary business information.***" Thus, the Court finds that Plaintiffs' claim for common law misappropriation is preempted by the PUTSA and Count V of the Second Amended Complaint will be dismissed.

### III.     "Count VII (Unfair Competition) - Metal and PCI v. SES"

In Count VII of the Second Amended Complaint, Plaintiffs assert a claim for "unfair competition." Plaintiffs allege that that Defendants' conduct "constitutes an unfair method of competition intended to destroy, and/or having the effect of destroying Plaintiffs' competitive advantages, good will, and business standing. Defendants argue that Count VII should be

11

dismissed because Plaintiffs have not pleaded any of the required elements for an unfair competition claim.

To recover under a claim of unfair competition, a plaintiff must prove the following: (i) plaintiff's mark is valid and legally protectable; (ii) that plaintiff owns the mark; and (iii) that defendant's use of plaintiff's mark is likely to create confusion among consumers concerning its goods and services. *Componentone, LLC v. Componentart, Inc.*, No. 02:05-cv-1122, 2008 WL 4790661 (W.D. Pa. Oct. 27, 2008).

The Court finds that Plaintiffs in this case have not alleged the elements necessary to state a claim for unfair competition. Admittedly, Plaintiffs have alleged that they have created confidential and proprietary designs, methods and procedure; however, Plaintiffs have not alleged that they own a legally protected mark or that Defendants have utilized Plaintiffs' mark to cause confusion among customers. Rather, Plaintiffs "unfair competition" claim appears to be very broad and encompasses all of Defendants' alleged bad or unfair acts. "Plaintiffs' attempt to construe the term 'unfair competition' as a virtual catch-all for any form of wrongful business conduct is contrary to the natural and ordinary meaning ascribed to that term." *USX Corp. v. Adriatic Inc. Co.*, 99 F. Supp.2d 593, 619 (W. D. Pa. 2000). Rather, "[t]he common law tort of unfair competition generally is understood as the act of passing off one's goods as those of another." *Id.*

For these reasons, Count VII of the Second Amended Complaint will be dismissed.

### IV. Gary L. Reinert, Sr.

Although Reinert is named as a plaintiff in the caption of this case, and named as a plaintiff at Counts I (injunctive relief), II (breach of the testing agreement), V (common law

trade secrets), and VI (the PUTSA claim), Defendants allege that "the balance of the Complaint fails to demonstrate that [Reinert] has a personal cause of action for any of the foregoing claims, or standing to assert the other defendants' claims." Memo. at 13.

In response, Plaintiffs assert that "[a]t all times relevant to the Second Amended Complaint Plaintiff Gary L. Reinert, Sr. ("Plaintiff Reinert") acted in his capacity as a representative of Plaintiff Power Contracting, Inc. ("Power Contracting) and Plaintiff Safe Foundations, Inc. d/b/a Metal Foundations, LLC ("Metal Foundations")." Br. at 19. Plaintiffs argue that "[b]ecause Defendants have not filed an Answer to Plaintiff's Complaint, it is unclear whether Defendants may assert a defense that Mr. Reinert did not act in this capacity." *Id*.

Regardless of any affirmative defense Defendants may assert, in order to establish standing, Plaintiff must establish that (i) Reinert suffered an "injury in fact;" (ii) that there must be a "causal connection between the injury and the conduct complained of"; and (iii) it must be "likely," rather than "speculative," that a favorable decision will redress the injury. *Mariana v. Fisher*, 338 F.3d 189, 204 (3d Cir. 2003) (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992) (citations omitted)). It has long been recognized that generally a "stockholder, director, officer or employee of a corporation has no personal or individual right of action against third persons for damages that result indirectly to the individual because of an injury to the corporation." *Temp-Way Corp. v. Continental Bank*, 139 B.R. 299, 316-317 (E.D. Pa. 1992) (citations omitted). An exception to this rule is that an individual stockholder or officer may bring a direct action where he has pled an injury separate and distinct from that incurred by the corporation. *Chrysler Credit Corp. v. BJM, Jr., Inc.*, 834 F. Supp. 813, 838 (E.D. Pa. 1993).

The Second Amended Complaint clearly names Reinert as a plaintiff in his individual capacity. However, Plaintiffs have alleged no injury to Reinert in his individual capacity nor

have they alleged any legally protected interest in the contract or tort claims which are asserted in the Second Amended Complaint. For example, with respect to Count I, Plaintiffs request that the Court order Defendants to "return all of Metal's designs and drawings and other documents regarding the metal, one piece foundation." Second Amended Complaint, at 17. Count I also requests the Court to enjoin Defendants from manufacturing, installing, or awarding a contract for the manufacture or installation of the metal, one piece foundation for the Solar II Project. *Id*. Reinert is not alleged to own any of the disputed intellectual property or to have a separate contract with Defendants.

With respect to Count II (breach of a written contract between PCI, Metal and SES), Reinert is not alleged to be a party to the contract. With respect to Counts V and VI, the common law and statutory trade secrets claims, Plaintiffs have not alleged that Reinert either owns any of the alleged trade secrets or confidential information, or that he acted in his individual capacity during his dealings with Defendants. Rather, Plaintiffs assert that "Metal and PCI" provided SES with access to "its" confidential and proprietary information. *See* Second Amended Complaint, at ¶ 31. Furthermore, Reinert is not alleged to have acted in his individual capacity during his dealings with Defendants. Instead, it is alleged that meetings occurred between Metal, PCI, Schuff and SES.

Finally, Plaintiffs have not alleged that Reinert directly expended any of his own funds or suffered a personal loss related to this matter. To the contrary, the Second Amended Complaint asserts that, to date, "Metal [Foundations] has expended no less than One Million Dollars" related to the Solar II project. *Id*. at ¶ 79.

The Court finds and rules that the Second Amended Complaint is devoid of any allegations that Reinert has suffered an injury separate from that allegedly suffered by PCI and

Metal.  For all these reasons, the Second Amended Complaint fails to assert any individual claims on behalf of Reinert and, therefore, Reinert will be dismissed as a named plaintiff.

**Leave to Amend the Complaint**

If a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless an amendment would be inequitable or futile.  *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).  A district court must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend.  *Id*.  Even if a plaintiff does not seek leave to amend the complaint after the defendant moves for dismissal, unless the district court finds that amendment would be inequitable or futile, the Court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 102 (3d Cir. 2002).  The district court may dismiss the action if the plaintiff does not file an amended complaint within that time, or if the plaintiff files a notice of her intent to stand on the complaint as filed.

Accordingly, Plaintiffs will be granted leave to amend, if they so choose, Count VII of their Complaint, as well leave to amend the Complaint to establish that Gary L. Reinert, Sr., has a personal cause of action for any of the foregoing claims  or standing to assert the other defendants' claims.  If Plaintiffs choose to file an amended complaint, they should plead (i) sufficient facts to state a common law unfair competition claim and (ii) sufficient facts to establish that Gary L. Reinert, Sr. should remain as named plaintiff.

However, the Court finds and rules that it would be futile to allow Plaintiffs to amend Counts III and V of their complaint.  As discussed *supra*, there is no cognizable claim for a breach of an anticipated contract (Count III) and the PUTSA preempts any common law claim

for conversion / misappropriation, disclosure and misuse of trade secrets and confidential information (Count V). An amended complaint could not alter these legal conclusions.

## **Conclusion**

For the reasons hereinabove stated, the Partial Motion to Dismiss filed by Defendants will be granted. An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| POWER CONTRACTING, INC., GARY L. REINERT, SR. and SAFE FOUNDATIONS, INC. d/b/a METAL FOUNDATIONS, LLC, <br> Plaintiffs, <br> v. <br> STIRLING ENERGY SYSTEMS, INC. and IMPERIAL VALLEY SOLAR, LLC., <br> Defendants. | ) ) ) ) ) ) ) ) ) ) | 2:09-cv-00970 |

## ORDER OF COURT

**AND NOW**, this 22nd day of November, 2010, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED, AND DECREED** that DEFENDANTS' PARTIAL MOTION TO DISMISS (*Document No. 21*) is **GRANTED**.

It is further **ORDERED** that, on or before **December 6, 2010**, Plaintiffs may file an amended complaint to correct the noted deficiencies in their Second Amended Complaint, or file a notice of intent to stand on the current complaint.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc:  Rochelle R. Koerbel, Esquire
Blumling & Gusky
Email: RKoerbel@BlumlingGusky.com

Paul D. Steinman, Esquire
Eckert, Seamans, Cherin & Mellott
Email: psteinman@eckertseamans.com